**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **CASE NO.:   6:24-bk-02727-LVV** |
| **CONTROL MICRO SYSTEMS, INC.,** | **CHAPTER 11** |
| **Debtor.** _____/ | |

**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL**

> The Debtor respectfully requests that an emergency hearing on the relief requested in this Motion be held on or before **Tuesday, June 4, 2024.**

**CONTROL MICRO SYSTEMS, INC.** ("CMS" or "Debtor"), by and through undersigned counsel, respectfully requests authority to use cash collateral (this "Motion") and requests an **emergency preliminary hearing on or before Tuesday, June 4, 2024**, to consider the relief requested herein. In support of this Motion, Debtor states as follows:

**I.    JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are sections 105, 361, 363, 541, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001, 7004, 9014, and 9034(f) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Rule 2081-1(g)(1).

II. **PROCEDURAL HISTORY**

3. On May 30, 2024 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, thereby initiating the above-styled chapter 11 case.

4. No trustee has been appointed and the Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

III. **BACKGROUND**

A. **Description of the Debtor's Business**

5. The Debtor is in the industrial laser business. CMS provides a wide range of laser applications including marking but also cutting, welding, and drilling, often with automated high speed material handling and vision systems for inline quality monitoring. CMS's products are highly specialized, the costs for its custom-engineered systems range from ~$175K to +$1MM.

6. For more details regarding the Debtor's business, please refer to the Chapter 11 Case Management Summary (Doc. No. 4).

B. **The Cash Collateral**

7. As used herein, "Cash Collateral" is defined as set forth in section 363(a) of the Bankruptcy Code, which includes, without limitation, cash on hand and accounts receivable.

8. By way of this Motion, the Debtor seeks authority to use funds that might arguably be Cash Collateral to pay the normal operating expenses and costs associated with running its business and administering this chapter 11 case.

9. As of the Petition Date, the Debtor had assets consisting of cash, inventory, accounts receivable, and equipment, which have an approximate book value of $3,500,000.

10. The Debtor's assets include the balance in its prepetition bank account (the "Prepetition Account"), as follows:

| Acct Holder | Depository | Acct # | Balance |
|---|---|---|---|
| **CONTROL MICRO SYSTEMS, INC.** | T.D. Bank, N.A. | **6560 | $179,577.00 |

**C.     Prepetition Secured Lender**

11.     The Debtor is indebted to Bank of America, N.A. under a secured loan facility with a principal balance owing of $5,500,000, plus accrued interest. The Debtor's obligations under the loan facility are secured by a UCC Financing Statements on virtually all its assets.

12.     Although other UCC Financing Statements are of record, the Debtor asserts those do not encumber, nor constitute a lien, on Cash Collateral.[1]

**D.     The Debtor has an Immediate Need for the Use of Cash Collateral**

13.     The Debtor requires immediate access to liquidity to ensure preservation of business operations and value of the estate during the pendency of this chapter 11 case. Without prompt access to Cash Collateral, the Debtor will be unable to pay normal operational expenses, including employee wages and benefits, or otherwise fund the administration of the estate. Such an outcome would cause immediate and irreparable harm.

14.     During this chapter 11, the Debtor will need the cash generated from operations to satisfy payroll obligations, obtain supplies, pay suppliers and vendors, maintain insurance coverage, pay taxes, and make any other payments essential to the continued management, operation, and preservation of the business. The ability to satisfy these expenses as and when they come due is essential to the continuity of business operations and to ensure preservation of the estate's value during the pendency of this chapter 11.

15.     The Debtor has developed the cash flow forecast (the "Budget") for the use of Cash Collateral during the interim period attached as **Exhibit A** and incorporated herein by reference

---

[1] *See* Case Management Summary (Doc. No. 4).

(the "Budget"). The Debtor believes the Budget provides sufficient liquidity during the interim period. The Budget contains line items for cash flows anticipated to be received and disbursed during the period for which the Budget is prepared.

16. Except as specifically authorized by law or court order, the Debtor will not use Cash Collateral to pay prepetition obligations.

## IV.   BASIS FOR RELIEF

17. Section 363(c)(1) of the Bankruptcy Code governs a debtor's use of estate property, as follows:

> If the business of the debtor is authorized to be operated under . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

*See* 11 U.S.C. § 363(c)(1).

18. A debtor-in-possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 1107(a). "Section 363(c)(2) balances competing interests in a Chapter 11 reorganization . . . [A] debtor reorganizing his business has a compelling need to use cash collateral in order to meet its daily operating expenses and rehabilitate its business." *In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010); *see also In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984) ("A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure

would be frustrated."). Here, the Debtor may use Cash Collateral to ensure continuation of the business, which is essential to overall reorganizational efforts.

19. When a chapter 11 debtor-in-possession is authorized to operate its business, it may use property of estate in ordinary course of business but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. *In re Delco Oil, Inc.*, 599 at 1258 ("The Bankruptcy Code prohibits the post-petition use of cash collateral by a trustee or a debtor-in-possession, unless the secured party or the bankruptcy court after notice and a hearing authorizes the use of cash collateral upon a finding that the secured party's interest in the cash is adequately protected."); *see also* 11 U.S.C. § 1107(a);[2] 11 U.S.C. § 363(c)(2);[3] 11 U.S.C. § 363(e).[4]

20. The Debtor is aware that cash currently held in its Prepetition Account(s) might constitute the collateral of BOA and any other applicable secured lenders (the "Secured Lender(s)"). In connection with the requested use of Cash Collateral herein, the Debtor shall provide sufficient and adequate protection to the Secured Lender(s) by way of replacement liens to ensure that the respective secured claims are adequately protected.

21. Section 363(e) of the Bankruptcy Code provides for adequate protection of secured interests in property when a debtor uses cash collateral. Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. 11 U.S.C. § 362(d)(1) ("On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . for cause, including the lack of adequate

---

[2] Providing a debtor-in-possession the rights, powers, functions and duties of a bankruptcy trustee.

[3] "The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

[4] "[O]n request of an entity that has an interest in property ... proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

protection of an interest in property of such party in interest"). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, bankruptcy courts ultimately decide what constitutes sufficient adequate protection on a case-by-case basis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987) (hereinafter referred to as "*O'Connor*"); *see also Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985). For example, in *O'Connor*, the court held that "[i]n order to encourage the debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *Id*. at 1936 (citations omitted); *see also In re Quality Interiors, Inc.*, 127 B.R. 391 (Bankr. N.D. Ohio 1991) (holding that a replacement lien provided adequate protection).

22. Adequate protection is meant to ensure that the secured creditor receives the value for which it originally bargained pre-bankruptcy. *The Resolution Trust Corp. v. Swede/and Dev. Group, Inc. (In re Swede/and Dev. Group., Inc.)*, 16 F.3d 552, 564 (3rd Cir. 1994) (citing *O'Connor*, 808 F.2d at 1396-97). Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value in the interim between the filing and the confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982). The purpose of the adequate protection requirement is to protect secured creditors from diminution of value during the use period. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *see also In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

23. As set forth in more detail above, the Debtor proposes to provide the Secured Lender(s) with replacement liens which it believes adequately protects the secured interests.

24. The Debtor respectfully submits that the proposed adequate protection, by way of replacement liens, is sufficient to protect the Secured Lender(s) from any diminution in value to the applicable collateral during the interim period. *See, e.g.*, *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

25. Considering the foregoing, the Debtor submits that the proposed adequate protection to be provided for the benefit of the Secured Lender(s) is appropriate. The Debtor's proposed adequate protection is not only necessary to protect the Secured Lender(s) against any diminution in value, but it is also fair and appropriate on an interim basis under the circumstances of this Bankruptcy Case to ensure that the Debtor is able to continue using the Cash Collateral in the near term for the benefit of all parties in interest and its estate.

26. Further, the claims of the Secured Lender(s) would achieve a *de minimis* recovery absent the permitted use of Cash Collateral as set forth herein. The closure of the Debtor's ongoing operations, however, would be catastrophic to value. That improvement and maintenance of value provides adequate protection to the Secured Lender(s).

27. The inability of the Debtor to pay ordinary course expenses will drastically inhibit its ability to satisfy payroll obligations, obtain supplies, maintain insurance coverage, pay taxes, and make any other payments essential to the continued management, operation, and preservation of its business. The inability to fund operations will significantly—if not completely—diminish the chances for a successful reorganization. Prohibiting the use of Cash Collateral is not in the best

interest of any Secured Lender(s), as such discontinuation would also materially and adversely impact the value of the collateral securing such interests. It is in the best interest of the Debtor, the estate, and all creditors to preserve the value of the business and estate.

28. The Debtor believes that the approval of this Motion is in the best interest of the Debtor, creditors, and the estate because it will enable the Debtor to: (a) continue the orderly operation of the business and avoid an immediate shutdown of operations; (b) meet obligations for necessary ordinary course expenditures and other operating expenses; and (c) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor and the estate.

29. There is insufficient time for a full and final hearing pursuant to Bankruptcy Rule 4001(b)(2) to be held before the Debtor must use Cash Collateral. If this Motion is not considered on an emergency basis and the Debtor is denied the ability to immediately use Cash Collateral, there will be a direct and immediate material and adverse impacts on continuing operations of the business and the overall value of the estate.

30. Despite the emergency nature of this Motion, the Debtor will mail and email (where available) this Motion to the potentially impacted creditors and email known counsel for secured creditors and will file a certificate of service for the same.

31. This Motion is without prejudice to the rights of the Debtors or any other party to contest the extent, validity, and/or priority of any asserted liens or interests.

*Remainder of page intentionally blank*

**WHEREFORE,** the Debtor respectfully requests that the Court enter the interim order: (a) granting this Motion; (b) authorizing the interim use of Cash Collateral consistent with the Budget, subject to a 10% variance; (c) granting the proposed adequate protection to the Secured Lender(s); (d) scheduling a final hearing on the use of Cash Collateral in accordance with Bankruptcy Rule 4001(b)(2); and (e) granting such other and further relief as the Court may deem proper.

**RESPECTFULLY SUBMITTED** this 3rd day of June 2024.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No.: 984469
rshuker@shukerdorris.com
Lauren L. Stricker, Esq.
Florida Bar No.: 91526
lstricker@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Tel: (407) 337-2060
*Attorneys for the Debtors*

**CMS CASH WEEKLY ACTIVITY**

| Week Ending | 5/17/2024 | 5/30/2024 | 6/7/24 | 6/14/2024 | 6/21/2024 | 6/28/2024 | 7/5/2024 | 7/12/2024 | 6/7 - 7/12 |
|---|---|---|---|---|---|---|---|---|---|
| AR Cash Collections Week-to-date | | | | | | | | | |
| Forecast Receipts | | | 172,500 | 211,489 | 207,967 | 77,315 | | | 669,271 |
| | | | | | | | | | - |
| | | | | | | | | | - |
| | | | | | | | | | - |
| Net Cash Received | | - | 172,500 | 211,489 | 207,967 | 77,315 | - | - | 669,271 |
| *Outflow:* | | | | | | | | | |
| Paycor Payroll and 401K | | | (100,000) | | (100,000) | | (100,000) | | (300,000) |
| Medical Insurance | | | | | (22,000) | | | | (22,000) |
| Debit Card | | | | | | | | | - |
| Rent/auto draw/ tax payments/other | | | (39,000) | | | | (39,000) | | (78,000) |
| Professionals/legal | | | | | | | | | - |
| ACH & Wire payments | | | | (56,321) | (11,000) | | (17,321) | | (84,642) |
| | | | | | | | | | - |
| | | | | | | | | | - |
| Net cash outflow | | - | (139,000) | (56,321) | (133,000) | - | (156,321) | - | (484,642) |
| **Change in net cash** | | - | 33,500 | 155,168 | 74,967 | 77,315 | (156,321) | - | **184,629** |
| *Available Cash* | | 155,000 | 188,500 | 343,668 | 418,635 | 495,950 | 339,629 | 339,629 | **339,629** |
| Est. Invoicing | | | 442,334 | | 41,100 | 158,100 | 105,400 | | |
| AR - estimated | | 400,000 | 669,834 | 458,345 | 291,478 | 372,263 | 477,663 | 477,663 | |
| AR + Cash | | 555,000 | 858,334 | 802,013 | 710,113 | 868,213 | 817,292 | 817,292 | |
| | | | | | | change in collateral | | 262,292 | |